CLERK'S OFFICE U.S. DIST COURT
AT DANVILLE, VA
FILED
for Roanoke
DEC - 1 2009
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT A. MORRISON, <br> Plaintiff, | Civil Action No. 7:08-cv-00643 |
| v. | **MEMORANDUM OPINION** |
| SERGEANT JORDAN, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Robert Morrison, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Morrison named as defendants Albemarle County; the Superintendent of the Albemarle-Charlottesville Regional Jail ("Jail"), Colonel Matthews; and Jail correctional officers Lieutenant Booker, Sergeant Jordan, Corporal Burgess, and Officer Colbert. Morrison alleges that the Jail's correctional officers and Superintendent violated his constitutional right to be free from punishment and seeks damages as relief. I previously granted Albemarle County's motion to dismiss and terminated it as a party. The remaining defendants filed a motion to dismiss, and Morrison responded, making the matter ripe for disposition.[1] After reviewing the record, I grant in part and deny in part defendants' motion to dismiss.

I.

Morrison alleges the following facts. On October 28, 2008, Morrison was confined in the Jail in the "FI Unit" as a segregated pretrial detainee. (Compl. (docket # 1) 4.) The FI Unit had six cells. (Id.) The Jail assigned him to the FI Unit because he refused a specific housing assignment. (Id.) At approximately 8 o'clock in the morning, Officer Colbert ordered Morrison

---

[1] Morrison also filed a motion for partial summary judgment for his claims against Superintendent Matthews.

to hand-in his personal property bin, but Morrison refused. Officer Colbert contacted his superiors, and Corporal Burgess, Sergeant Jordan, and Lieutenant Booker came to Morrison's cell. Sgt. Jordan and Cpl. Burgess twice ordered Morrison to place his back against the cell door and place his hands behind him in order to be hand-cuffed. Morrison again refused the orders and remained sitting on his bunk. Sgt. Jordan pepper-sprayed Morrison for forty-five seconds, and the officers left the area. (Id. 5.) Other officers removed the other five inmates in the FI unit from their cells. The defendants returned to Morrison's cell and repeated the order to "cuff-up" against the cell door, and Morrison "remained sitting on his bunk with a wet towel washing his face[;] he remained defiant to the order." (Id.) Sgt. Jordan or Cpl. Burgess pepper-sprayed Morrison for another forty-five seconds, and Lt. Booker opened the cell door.

Cpl. Burgess, Sgt. Jordan, and Ofc. Colbert entered Morrison's cell. Cpl. Burgess entered first, punching Morrison in the head and knocking him backwards on his bunk. (Id.) Sgt. Jordan and Cpl. Burgess then punched, kicked, and "assault[ed]" Morrison while he was on his bunk, causing temporary unconsciousness. Notably, Morrison alleges that he never punched, kicked, flailed, or struck the defendants. (Compl. 5-6.) Officer Colbert then "roughed up" Morrison. (Id. 6.) Another officer finally handcuffed Morrison while he laid face-down on his bunk.

Five minutes later, staff brought Morrison to the Jail's medical unit from which Morrison was sent to the University of Virginia Medical Center ("Hospital"). The Hospital performed an x-ray for his cracked ribs and a CT-scan for his concussion, stitched a laceration behind his right ear, and treated various cuts, bruises, and welts. (Id.) The Hospital released him back to the Jail the same day, where he was kept in the medical unit for one week. However, medical staff sent Morrison back to the Hospital for nine days to be treated for his concussion. (Id. 7.) Morrison

2

alleges that he administratively exhausted all grievance procedures available at the Jail.

II.

I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, the plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

Morrison named the defendants in both their official and individual capacities while seeking monetary damages. The defendants responded in their motion to dismiss that the Eleventh Amendment barred recovery of monetary damages against the defendants in their official capacities. In his response to the motion to dismiss, Morrison concedes this issue. (Pl.'s Resp. (docket #43) 2.) Accordingly, I dismiss Morrison's claims against the defendants in their official capacities.

The defendants argue that they are entitled to qualified immunity because the plaintiff fails to state a claim upon which relief may be granted. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (overruled on other grounds by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009)).

Qualified immunity is an immunity from suit rather than a mere defense to liability, and I must determine whether any right was violated and whether that right was clearly established. See Pearson, 129 S. Ct. at 815-16 (citing Saucier, 533 U.S. at 194) (permitting lower courts discretion on how to prioritize the order for qualified immunity analysis). A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007).

A. The alleged facts show that the defendants' conduct violated a constitutional right.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Constitution generally prohibits the use of unnecessary and wanton force on inmates. See Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (pretrial detainee's excessive force claims brought under the Fourteenth Amendment). See, e.g., Whitley v. Albers, 475 U.S. 312, 319 (1986). The standard to determine whether the use of force against a pretrial detainee violates the due process clause of the Fourteenth Amendment "is whether those conditions [of confinement] amount to punishment of the detainee," Bell v. Wolfish, 441 U.S. 520, 535 (1979),[2] and Morrison must demonstrate that the defendants "inflicted unnecessary and wanton pain and suffering" upon him, Taylor, 155 F.3d at 483 (citing Whitley, 475 U.S. at 320). In "determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem v. Rephann, 523 F.3d 442, 446 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.

---

[2] As a practical matter, the contours of pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997) (extending de minimis exclusion from Eighth Amendment analysis to Fourteenth Amendment analysis for pretrial detainee's excessive force claim). See also Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977) (stating Eighth Amendment "cruel and unusual punishment" protections do not apply until after conviction and sentence). The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). However, the boundary between Fourteenth and Eighth Amendment rights in this context are not exact. See, e.g., Id.; Mitchell v. Aluisi, 872 F.2d 577 (4th Cir. 1989); Whisenant v. Yuam, 739 F.2d 160, 163 n.4 (4th Cir. 1984) (disapproved on other grounds); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978).

1973) (internal quotation marks omitted)). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) (extending the Whitley standard to all allegations of excessive force). After considering these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321.

However, I recognize that a person's legal detention in a correctional facility entitles officers to employ force "calculated to effectuate" compliance attendant to the restraints of freedom imposed in the facility.

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Id. at 539 (citations omitted). See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-67, 186 (1963) (describing the tests traditionally applied to determine whether a governmental act is punitive in nature). Therefore, a pretrial detainee must also establish that the punishment was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred. Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). If there is no express intent to punish, I must determine whether "an alternative purpose to which [the act] may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." Robles v. Prince George's County, 302 F.3d 262, 269 (4th Cir. 2002) (internal

quotation marks omitted). Furthermore, a de minimis injury usually defeats a plaintiff's excessive force claim unless "the force used [is] . . . of a sort repugnant to the conscience of mankind . . . or the pain itself [is] . . . such that it can properly be said to constitute more than de minimis injury." Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir. 1994). See Riley, 115 F.3d at 1166 (extending de minimis rule to pretrial detainee's excessive force claims).

After liberally construing the complaint and viewing the facts in a light most favorable to the pro se plaintiff, the facts allege that correctional officers punched and kicked a pretrial detainee to cause cracked ribs; a laceration warranting stitches; momentary unconsciousness; a concussion; nine days of medical treatment; and various cuts, bruises, and welts when the pretrial detainee refused to turn in a property bin or cuff up and was passive throughout the encounter. Given the present record and alleged injuries, a reasonable juror could find that excessive force occurred to punish Morrison for disregarding orders to turn in his property bin or cuff-up and that such force was unnecessary and wanton to retrieve a property bin from a passive but recalcitrant pretrial detainee.

It is not presently clear that a need for the application of physical force was necessary to retrieve the property bin from the passive pretrial detainee. However, even after I assume that some force may have been necessary, the force needed does not appear to equate to punching and kicking a pretrial detainee with such force to crack his ribs and require a hospital stay of more than a week.

Furthermore, Morrison's alleged injuries, a laceration, concussion, momentary unconsciousness, and, most notably, cracked ribs, exceed de minimis injuries. Compare Hudson, 503 U.S. at 10 (not de minimis injuries under the Eighth Amendment for bruises, swelling,

loosened teeth, and cracked dental plate stemming from an argument), Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002) (not de minimis injuries under the Eighth Amendment for rib fractures, back injuries, scalp lacerations, and abdominal injuries that required nine days of hospitalization and months of rehabilitation), and Sanders-El v. Spielman, 38 F. Supp. 2d 438, 439 (D. Md. 1999) (not de minimis injuries under the Eighth Amendment for bruises, a black eye, and continuing elbow pain for thirty days following an argument), with Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998) (de minimis injuries under the Eighth Amendment for bruises, swelling, loosened teeth, and a cracked dental plate in response to a riot).

    1.    Sgt. Jordan & Cpl. Burgess

Although Morrison acknowledges that he did not comply with the officers' requests to turn in his property bin or cuff-up, he alleges that he passively sat on his bunk during the dispute and Sgt. Jordan and Cpl. Burgess entered the cell, punching and kicking Morrison to the degree they cracked his ribs while he never flailed his extremities, acted aggressively, or struck an officer. Based on the facts as I must view them, it is arguable that Jordan and Burgess' actions resulted in an impermissible infliction of punishment or was the sort of force that is repugnant to the conscience of mankind. I find that the current record and required perspectives would permit a reasonable jury to infer that an amount of force by Sgt. Jordan and Cpl. Burgess was beyond that required to restore discipline by "punching and kicking . . . causing momentary unconsciousness" and cracking a pretrial detainees ribs for his "passive resistance" and not turning in his property bin or cuffing up. Therefore, as pled, Morrison states a claim against Sgt. Jordan and Cpl. Burgess.

2. Ofc. Colbert.

Even after liberally construing the complaint, Morrison does not state a claim against Ofc. Colbert despite his two amendments because he only alleges that Colbert "roughed him up physically" after Jordan and Burgess already assaulted him. The phrase "roughed up physically" does not describe any conduct by Colbert that violated Morrison's constitutional rights. Because such labels and conclusions are insufficient to state a claim, I must dismiss Morrison's claims against Ofc. Colbert.

3. Lt. Booker and Supt. Matthews.

Morrison argues that Lt. Booker is liable for being the on-scene supervisor and failing to stop his "physical beating" by his subordinates in his presence. (Compl. 9.) I construe this argument as asserting claims of bystander liability and supervisory liability. The theory of bystander liability arises from "a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall v. Prince George's County, 302 F.3d 188, 203 (4th Cir. 2002). To prove bystander liability, a plaintiff must demonstrate that an officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act. Id. (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)). Morrison alleges that Lt. Booker stood at his cell door and opened the door to let Cpl. Burgess and Sgt. Jordan into his cell. While Sgt. Jordan and Cpl. Burgess allegedly beat Morrison, Lt. Booker stood by the door, watched the events, and did not try to control his subordinates. (Compl. 9-10; Pl.'s Resp. 11.) In light of Morrison's accusations, Morrison states a constitutional claim of bystander liability against Lt. Booker.

The concept of supervisory liability "arises from the obligation of a supervisory law

officer to insure that his subordinates act within the law" and requires a greater showing than bystander liability. Randall, 302 F.3d at 203. To prove supervisory liability, a plaintiff must establish three elements.

> These [elements] are: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." [Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)] (citations omitted). Under the first prong of Shaw, the conduct engaged in by the supervisor's subordinates must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." Id. Furthermore, in establishing "deliberate indifference" under Shaw's second prong, a plaintiff "ordinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Deliberate indifference, however, may be satisfied by showing "[a] supervisor's continued inaction in the face of documented widespread abuses." Id.

Randall, 302 F.3d at 206.

Morrison alleges that he spoke with several guards at the Jail who told him that they did not receive training on "the proper methods to handle a cell extraction." (Compl. 10.) Morrison also alleges that the Jail's standard operating procedure manual does not describe proper cell extraction methods. (Id. 11.) Morrison also paraphrases testimony from Supt. Matthews during a related state court proceeding in which Supt. Matthews allegedly indicated he was aware that "situations like the plaintiff's cell extraction happened" but "each situation is different and the officers do whatever they deem necessary." (Pl.'s Resp. 17-18.) Morrison also argues that the lack of video recordings for cell extractions facilitated his beating and he would not have been

10

beaten if video recordings of cell extractions were conducted. (Id. 19, 20.)[3]

Morrison fails to state supervisory claims against either Lt. Booker or Supt. Matthews. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread[] or at least has been used on several different occasions. . . ." Shaw, 13 F.3d at 799 (citing Slakan, 737 F.2d at 373-74). Nowhere does Morrison establish a "pervasive and unreasonable risk" that their subordinates use wanton force on inmates during cell extractions or document any abuses beyond his own conclusions. Without the knowing existence of such a persuasive and unreasonable risk, neither Supt. Matthews nor Lt. Booker can be expected to respond, and Morrison similarly fails to establish their deliberate indifference to "documented widespread abuses." Id. Moreover, a correlation between the lack of video recording cell extractions and the alleged actions of the defendants is too tenuous to impose supervisory liability; the causal link requires both proximate cause and cause in fact. Id. Accordingly, I dismiss the supervisory liability claims against Supt. Matthews and Lt. Booker.[4]

---

[3] Defendants also interpreted one of Morrison's claims as a third party beneficiary contract claim. Morrison alleges that the Jail's inmate population includes federal inmates, pursuant to contracts between the Jail and the United States Marshals Service. (Second Mot. Am. (docket #14) 2-3.) Plaintiff alleges that the contract requires the Jail to adhere to American Correctional Association ("ACA") standards that require cell extractions to be videotaped. (Id. 3-4.) Plaintiff argues that he would not have been subjected to excessive force if the Jail complied with the ACA standards as required by the contract. (Id. 5-6.)
State law applies to the determination of whether Morrison may sue the Jail as a third-party beneficiary of federal contracts when there is no substantial right, interest, liability, or duty of the United States dependent upon the outcome of the litigation. Miree v. DeKalb County, Georgia, 433 U.S. 25, 28-32 (1977). A party claiming to be a third party beneficiary under Virginia law "must show that the parties to a contract 'clearly and definitely intended' to confer a benefit upon him." Copenhaver v. Rogers, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989). "Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon." Id. (citing Valley Company v. Rolland, 218 Va. 257, 259-60, 237 S.E.2d 120, 122 (1977)). Morrison is a pretrial detainee on a state charge, fails to establish that he is a party that the contracting parties clearly and definitely intended to benefit from ACA standards, and presumably only incidentally benefits from the contract. Therefore, Morrison may not recover as a third party beneficiary.

[4] Inasmuch as Morrison filed a premature motion for partial summary judgment in which he asserts supervisory liability against Supt. Matthews, I deny the motion as moot.

11

Morrison also argues that Supt. Matthews did not adhere to Va. Code § 53.1-68 ("Minimum standards for local correctional facilities, lock-ups and personnel, health inspections"), which requires a regional jail superintendent to establish minimum performance and management practices to manage his subordinates.[5] Given that Morrison fails to establish any deliberate indifference by Matthews, his state law argument sets forth only a claim of negligence, and negligence is insufficient to state a constitutional claim actionable under § 1983. See, e.g., Davidson v. Cannon, 474 U.S. 344 (1986) (mere negligent failure to protect inmate does not deprive liberty nor violate the Fourteenth Amendment); Whitley, 475 U.S. at 319 ("obduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . ."). Accordingly, I dismiss Morrison's failure to train and set policy claims against Supt. Matthews.

    4.    Intentional Infliction of Emotion Distress.

Morrison also asserts a state law claim of intentional infliction of emotional distress against the correctional officers. Actions for intentional infliction of emotional distress are not favored in Virginia. Harris v. Kreutzer, 271 Va. 188, 204, 624 S.E.2d 24, 33 (2006). The Supreme Court of Virginia established that a plaintiff cannot recover on an intentional infliction of emotional distress claim unless he can show by clear and convincing evidence that "1) the

---

[5]Defendants interpreted Morrison's "failure to train claim" under the Virginia Code, and Morrison insinuates in his response to the motion to dismiss that he was not asserting that claim under state law but in support of his supervisory liability claims. To the extent Morrison may have also tried to proceed under Va. Code § 15.2-1706 ("Certification through training required for all law-enforcement officers; waiver of requirements."), he does not state a cognizable federal constitutional or state law claim because there is no vicarious liability under § 1983 to make Supt. Matthews' liable for his subordinates' actions, either pursuant to or in the absence of training. Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1977). Moreover, Morrison's action for damages against Supt. Matthews as a policy maker is considered a suit against him in his official capacity, and Morrison agreed with the defendants that his claims against them in their official capacities could not proceed because the Eleventh Amendment would bar any resultant damages award.

wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." Supervalu, Inc. v. Johnson, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008) (citing Almy v. Grisham, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007); Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974)). Liability "arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 163 (1991). Even if Morrison could satisfy the first three elements, he fails to allege that he suffers any emotional distress. Accordingly, I dismiss Morrison's claims of intentional infliction of emotional distress.

      B.      The law prohibiting excessive force on a pretrial detainee was clearly established.

Defendants conclude that "Plaintiff's allegations do not demonstrate a violation of clearly established law of which a reasonable official should have been aware." (Br. Supp. Mot. Dismiss (docket #40) 5 n.15.) A right is clearly established when it is:

> sufficiently clear that a reasonable official would understand that what he is doing violated that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted). "Clearly established . . . includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). "In determining whether a right was clearly established at the time of the claimed

violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, th[e] court of appeals, and the highest court of the state in which the case arose.'" Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc), abrogated in part by Wilson v. Layne, 526 U.S. 603 (1999)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19. The alleged assault occurred in 2008 and by that time "it was clearly established that an arrestee or pretrial detainee is protected from the use of excessive force." Orem, 523 F.3d at 448 (citing Bell, 441 U.S. at 520). The defendants did not include any affidavits or evidence with the motion to dismiss to convert the motion to a motion for summary judgment. Accordingly, I find, based upon the present record, that plaintiff sufficiently alleges that defendants violated his constitutional right to be free from excessive force while a pretrial detainee in the defendants' custody, in violation of clearly established law at that time.

III.

For the foregoing reasons, I grant in part and deny in part defendants' motion to dismiss. I grant the motion to dismiss regarding plaintiff's claims against the defendants in their official capacities, all claims against Officer Colbert, claim of supervisory liability against Lieutenant Booker, all claims against Superintendent Matthews, and claims of intentional infliction of emotional distress. Accordingly, Officer Colbert and Superintendent Matthews are terminated as defendants. I deny the motion to dismiss regarding plaintiff's Fourteenth Amendment claims against Sergeant Jordan, Corporal Burgess, and Lieutenant Booker. Moreover, plaintiff's motion

for partial summary judgment against Superintendent Matthews is denied as moot.[6] The remaining defendants shall file within twenty days an answer to the complaint, as amended, and the remaining defendants may file any dispositive motion, if desired, within twenty days. After twenty days, the matter shall be set for a jury trial.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

ENTER: This 1st day of December, 2009.

Senior United States District Judge

---

[6] Therefore, the remaining defendants and claims are excessive force against Sergeant Jordan and Corporal Burgess and bystander liability against Lieutenant Booker.